# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LEND LEASE (US) CONSTRUCTION, INC. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 15 C 4318 ) |
| TECHNOLOGY INSURANCE COMPANY, INC. and ADMINISTRATIVE EMPLOYER SERVICES, INC., | ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Technology Insurance Company, Inc.'s (TIC) and Defendant Administrative Employer Services, Inc.'s (AES) motions to dismiss. For the reasons stated below, the motions to dismiss are granted.

## BACKGROUND

Plaintiff Lend Lease (US) Construction, Inc. (Lend Lease) alleges that it entered into a contract to act as a construction manager for a construction project (Project) in Chicago, Illinois. According to Lend Lease, it subsequently entered into a contract with Cives Corporation d/b/a Cives Steel Company (Cives) to act as a

1

subcontractor and to perform work at the Project. Lend Lease claims that it also supplied the Contractor Controlled Insurance Program (CCIP) for the Project, which allegedly provided workers compensation insurance policies procured from CV Starr (Starr Policies) to all enrolled parties.

Pursuant to the Lend Lease and Cives subcontract, Cives allegedly enrolled in the CCIP and was issued a Starr Policy. Cives then purportedly entered into a sub-subcontract with Midwest Steel, Inc. (Midwest). Pursuant to the Cives and Midwest sub-subcontract (Cives-Midwest Sub-subcontract), Midwest also allegedly enrolled in the CCIP and was issued a Starr Policy. Lend Lease claims that after Midwest contracted with Cives, Midwest then entered into a sub-subcontract with AES (Midwest-AES Sub-subcontract). However, AES allegedly was not enrolled in the CCIP and thus was not issued a Starr Policy. According to Lend Lease, AES instead procured a workers compensation insurance policy with TIC (TIC Policy).

In December 2014, four ironworkers were allegedly injured (Injured Workers) in an accident while working at the Project. The Injured Workers allegedly sought workers compensation benefits due to the injuries sustained. Lend Lease also alleges that it is responsible for paying $500,000 of any covered claim under the Starr Policies. According to Lend Lease, CV Starr has accepted coverage for the Injured Workers, subject to a reservation of rights to recover any money paid by AES and/or TIC. Lend Lease contends that TIC has failed to fulfill an obligation to provide coverage for the Injured Workers' claims and reimburse Lend Lease for any amount paid, pursuant to the Midwest-AES Sub-subcontract and the terms of the TIC Policy.

2

Lend Lease includes in its second amended complaint claims for indemnification or contribution brought against TIC (Count I), a claim for declaratory relief brought against TIC (Count II), and a claim for unjust enrichment brought against AES (Count III). TIC now moves to dismiss the claims in Counts I and II, and AES moves to dismiss the claim in Count III.

**LEGAL STANDARD**

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted)**.**

**DISCUSSION**

I. TIC's Motion to Dismiss

TIC moves to dismiss both claims brought against it.

A. Contribution and/or Indemnification Claim (Count I)

TIC argues that Count I should be dismissed because Lend Lease failed to plead a legal theory which would entitle it to recover its own deductible from TIC under Illinois law. (TIC Mem. 1). The parties agree that contribution and indemnity are mutually exclusive under Illinois law, in that a plaintiff cannot obtain relief on both theories. (TIC Mem. 1); (Resp. TIC MTD 6); *see Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269, 276 (Ill. 2004)(stating that "[t]he remedies of contribution and indemnity are mutually exclusive, and contribution is prohibited where a party has a right to indemnity").

1. Contribution

TIC argues that Lend Lease has not pled the elements necessary to establish an equitable contribution claim under Illinois law. (TIC Mem. 8). The remedy of

contribution is "an equitable principle arising among coinsurers which permits one insurer who has paid the entire loss, or greater than its share of the loss, to be reimbursed from other insurers who are also liable for the same loss." *Home Ins. Co.*, 821 N.E.2d at 276; *see Royal Globe Ins. Co. v. Aetna Ins. Co.*, 403 N.E.2d 680, 683 (Ill. App. Ct. 1980)(stating that "the right to contribution has its basis in equity rather than in contract," and that "the right arises when one insurer pays money for the benefit of another insurer"). Since contribution "applies to multiple, concurrent insurance situations," it "is *only* available where the concurrent policies insure the same entities, the same interests, and the same risks." *Home Ins. Co.*, 821 N.E.2d at 276 (emphasis added). Accordingly, such elements "must be met before the insurance can be considered concurrent or double." *Id.*; *see Schal Bovis, Inc. v. Casualty Ins. Co.*, 732 N.E.2d 1179, 1186 (Ill. App. Ct. 2000)(stating that "[i]n order for an insurer to recover under a theory of equitable contribution, [it] must prove: (1) all facts necessary to the claimant's recovery against the insured; (2) the reasonableness of the amount paid to the insured; and (3) an identity between the policies as to parties and insurable interests and risks"). Moreover, if two insurers "cover separate and distinct risks," then "there can be no contribution among them." *Home Ins. Co.*, 821 N.E.2d at 276.

TIC contends that Lend Lease failed to allege that the instant policies provided concurrent coverage, that Lend Lease was the insurer for the loss, or that the parties have a mutual insured. (TIC Mem. 8). TIC argues that Lend Lease merely alleges that, as the construction manager of the Project, it had procured insurance policies

5

through CV Starr for contractors enrolled in the CCIP, including the Injured Workers' employer, Midwest. (TIC Mem. 8). Lend Lease argues that its allegations involve two policies which provide "concurrent workers compensation coverage to Midwest," in the Starr Policy issued to Midwest and the TIC Policy issued to AES, which Lend Lease claims should also provide coverage to Midwest pursuant to the Midwest-AES Sub-subcontract. (Resp. TIC MTD 8-9). Lend Lease also argues that it "has paid or will pay the first $500,000 of the Injured Workers' Claims," and that TIC should instead be responsible. (Resp. TIC MTD 9). Lend Lease further argues that it is not obligated to use specific phrases such as "concurrent coverage" in its second amended complaint, and that any discrepancies should not be resolved at the motion to dismiss stage. (Resp. TIC MTD 9).

In the second amended complaint, Lend Lease specifically alleges that "[a]s part of the CCIP, Lend Lease provided policies of workers compensation insurance to all enrolled parties[,]" and that "[t]hese policies were procured from CV Starr." (SA Compl. Par. 10). As TIC notes in its motion, Lend Lease does not allege that Lend Lease was the insurer of AES or Midwest but rather alleges that "CV Starr was the insurer for the loss" and that Lend Lease had an "obligation to pay the policy deductible" based on its own contractual obligation with CV Starr. (TIC Mem. 2). Lend Lease also failed to allege the policy periods of the Starr Policy and TIC Policy at issue. Accordingly, since Lend Lease cannot be seeking recovery against TIC for amounts paid as a concurrent insurer for the Insured Workers' claims, Lend Lease is instead seeking reimbursement of its deductible obligation under the Starr Policies.

6

(TIC Mem. 2, 8). Thus, Lend Lease has failed to plead the necessary elements of a contribution claim, in that it failed to allege that it is an insurer itself (and not CV Starr), and that the policies at issue covered the same entities, the same interests, and the same risks. *See Schal Bovis, Inc.*, 732 N.E.2d at 1186 (holding that policies at issue insured different risks and insurers were not liable for same loss). Therefore, Lend Lease has failed to state a claim for equitable contribution.

2. Indemnification

TIC argues that Lend Lease has failed to adequately plead a claim for indemnification under Illinois law. (TIC Mem. 10). As opposed to contribution, the remedy of indemnification is a means of "placing the *entire* burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged." *Home Ins. Co.*, 821 N.E.2d at 276 (emphasis in original). The parties agree that "the concept of implied indemnity is inapplicable to this matter." (Resp. TIC MTD 10); (TIC Mem. 6). Thus, the only issue is whether Lend Lease has pled a viable express indemnity claim.

Illinois law recognizes express indemnity as "arising out of agreement of the parties, implied by operation of law, or implied by the courts. . ." *Stifle v. Marathon Petroleum Co.*, 876 F.2d 552, 558 (7th Cir. 1989). TIC contends that Lend Lease "does not plead the existence of a contract between itself and [TIC] or even an express indemnity right against [TIC]," nor does Lend Lease allege that it is an insured under the TIC Policy. (TIC Mem. 2, 9). TIC argues that Lend Lease's

7

indemnity claims are based on the Midwest-AES Sub-subcontract and the TIC Policy, although Lend Lease "is not a party to either contract." (TIC Mem. 9). In its response, Lend Lease argues that its allegations that "it has paid and continues to pay the Injured Workers' Claims when TIC rightfully ought to do so" are sufficient to state an indemnification claim that it is "entitled to shift the entire burden of a loss it has paid onto another responsible party." (Resp. TIC MTD 10). However, in the absence of allegations including a contractual relationship or any agreement between Lend Lease and either TIC or AES, Lend Lease has failed to allege any facts to support an express indemnity claim. Lend Lease has thus failed to allege facts to support either an express indemnity claim or an implied indemnity claim. Therefore, Lend Lease has failed to state a claim for indemnification. Based on the above, TIC's motion to dismiss the alternative claims of contribution or indemnification (Count I) is granted.

### B. Claim for Declaratory Relief (Count II)

TIC argues that Lend Lease has not set forth a justiciable controversy and thus has no standing to seek declaratory relief against TIC. (TIC Mem. 11). In its second amended complaint, Lend Lease alleges that it is seeking two forms of declaratory relief: (1) "[a] declaration that TIC is obligated to pay workers compensation benefits to the Injured Workers," and (2) "[a] declaration that TIC is obligated to pay workers

compensation benefits to any potential future injured co-employees of Midwest and AES pursuant to the Midwest-AES Sub-subcontract." (SA Compl. 7).

As stated above, the court finds that Lend Lease has failed to sufficiently plead claims for contribution or indemnification. Thus, since the court has already ruled that the claims in Count I are defective, there is no basis upon which Lend Lease may seek a declaration of TIC's obligations under the TIC Policy in connection with the Injured Workers' claims. (*See Royal Globe Ins. Co. v. Aetna Ins. Co.*, 403 N.E.2d 680, 682 (Ill. App. 1980)(stating that the two basic requirements for bringing an action for declaratory relief are an actual controversy and standing). Based on the above, TIC's motion to dismiss Lend Lease's claim for declaratory relief (Count II) is granted.

II. AES's Motion to Dismiss

AES moves to dismiss the unjust enrichment claim brought against it in Count III. AES argues that Lend Lease does not a state a viable claim for unjust enrichment, contending that Lend Lease failed to allege facts that suggest that AES accepted or received any benefit from Lend Lease. (AES Mem. 3). AES contends that Michigan law applies to the unjust enrichment claim, and Lend Lease contends that Illinois law applies to the unjust enrichment claim. (AES Mem. 7, n. 4); (Resp. AES MTD 6). However, both parties contend that under either Illinois law or Michigan law, they are entitled to prevail in regard to AES's motion. (AES Mem. 7, n. 4); (Resp. AES MTD 6).

9

Under Illinois law, for an unjust enrichment claim, a plaintiff must establish "that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010)(citing *HPI Health Care Serv., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)); *see also Browning v. Browning*, 2014 WL 2781469, at *9 (Ill. App. Ct. 2014)(indicating that relief under an unjust enrichment claim is equitable relief and within the court's discretion). Under Michigan law, for an unjust enrichment claim, a plaintiff must establish: "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Hudson v. Mathers*, 770 N.W.2d 883, 887 (Mich. Ct. App. 2009)(stating that "[i]f this is established, the law will imply a contract in order to prevent unjust enrichment," but that "a contract will be implied only if there is no express contract covering the same subject matter"). Thus, under both Illinois and Michigan law, Lend Lease needs to allege that AES received and unjustly retained a benefit from Lend Lease.

AES contends that it was not involved in the negotiations and final agreement between Lend Lease and CV Starr. According to AES, it had no involvement with or relationship with Lend Lease. Lend Lease acknowledges in its second amended complaint that it entered into an agreement with Cives, and did not directly enter into any agreement with AES. (SA Compl. Par. 8, 12, 14). Lend Lease alleges that Cives entered into a subcontract with Midwest, which then entered into a subcontract with

10

AES. (SA Compl. Par. 8, 12, 14). Although there is no bar under an unjust enrichment to recovery for a benefit that passed between intermediaries, it is relevant to note that AES was two steps removed from Lend Lease on the Project.

Lend Lease alleges that "[a]s a result of AES' failure to secure workers compensation insurance extending to Midwest Steel and the Injured Workers, AES has been unjustly enriched in that it has paid less premium for its workers compensation insurance policy (i.e., the TIC Policy), it has not had to satisfy any applicable deductible or self-insured retention on the TIC policy, and/or it has not had the claims of the Injured Workers counted against its insurance loss runs." (SA Compl. Par. 38). However, such an allegation that AES was somehow benefitted in a tangential manner based on certain events is not sufficient to state a valid unjust enrichment claim. *Estate of McCallum*, 395 N.W.2d 258 (Mich Ct. App. 1986)(stating that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other" and that "[t]he process of imposing a contract-in-law to prevent unjust enrichment is an activity which should be approached with some caution"). Such facts fail to indicate that AES received any benefit from Lend Lease or that AES unjustly retained any benefit at Lend Lease's expense. There are no allegations in the second amended complaint that suggest that Lend Lease was even aware of AES or expected contribution from AES until after the Accident. Nor does Lend Lease identify any tangible monies that flowed to AES and that AES retained. Instead, Lend Lease references theoretical premiums that would have possibly been paid by AES if events had gone differently.

Lend Lease alleges in a conclusory fashion that "the unjust enrichment enjoyed by AES was to Lend Lease's detriment, and such unjust enrichment is inequitable and violates the fundamental principles of justice, equity, and good conscience," but Lend Lease fails to allege facts to support such a statement. Lend Lease cannot employ an unjust enrichment cause of action to troll far and wide for unknown third-parties that may have indirectly benefitted from the situation in order to recoup losses on a business deal that did not work out favorably. *Saletech, LLC v. E. Balt, Inc.*, 20 N.E.3d 796, 808 (Ill. App. Ct. 2014)(stating that "[t]he mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor")(internal quotations omitted)(quoting *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 812 N.E.2d 419 (Ill. App. 2004)); *NL Ventures VI Farmington, LLC v. City of Livonia*, 2015 WL 9392721, at *9 (Mich. Ct. App. 2015)(stating as in *Saletech* that "[t]he mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor")(internal quotations omitted)(quoting *Estate of McCallum*, 395 N.W.2d 258 (Mich Ct. App. 1986)); *see also Rutledge v. Hous. Auth. of City of E. St. Louis*, 411 N.E.2d 82, 86 (Ill. App. Ct. 1980)(stating that "[i]t follows from the requirement of an inequity that there is no general responsibility to compensate one for work and labor done irrespective of the circumstances in which it is carried out" and that "incidental" benefits are not sufficient for an unjust enrichment claim). Based on the above, AES's motion to dismiss the unjust enrichment claim (Count III) is granted.

## CONCLUSION

Based upon the foregoing analysis, TIC's motion to dismiss the claims in Counts I and II is granted, and AES's motion to dismiss the claim in Count III is granted.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: January 13, 2016